IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-918

Filed: 20 February 2018

Guilford County, No. 14 CVS 790

USA TROUSER, S.A. de C.V., Plaintiff,

v.

JAMES A. WILLIAMS; NAVIGATORS INSURANCE COMPANY; and NAVIGATORS MANAGEMENT COMPANY, INC., Defendants.

Appeal by plaintiff from order and opinion entered 25 July 2016 by Chief Judge James L. Gale in the North Carolina Business Court. Heard in the Court of Appeals 22 January 2018.

> *Law Offices of Matthew K. Rogers, PLLC, by Matthew K. Rogers, for plaintiff-appellant.*
>
> *Cozen O'Connor, by Tracy L. Eggleston and Patrick M. Aul, and Angelo G. Savino, pro hac vice, for defendant-appellees.*

TYSON, Judge.

USA Trouser, S.A. de C.V. ("Plaintiff" or "USAT") appeals an order of the North Carolina Business Court, granting Navigators Insurance Company's and Navigators Management Company, Inc.'s motions to dismiss. We affirm the trial court's order.

I. Background

The record on appeal tends to show the following:

USAT is a Mexican company, which manufactures socks and hosiery products. USAT sold socks on credit to International Legwear Group, Inc. ("ILG"), a company conducting business within North Carolina.

Navigators Insurance Company ("Navigators Insurance") had issued a directors and officers liability insurance policy (the "Policy") to ILG for the period from 31 December 2010 through 31 December 2017.

In September 2011, USAT filed suit (the "Underlying Action") against ILG and a number of its directors and officers. USAT alleged ILG had failed to disclose its worsening financial condition, while continuing to obtain products from USAT upon credit. USAT asserted claims for breach of contract; breach of fiduciary duty; fraudulent concealment; negligent misrepresentation; unfair and deceptive trade practices; breach of implied covenants of good faith and fair dealing; fraudulent and/or negligent failure to perform statutory duties; conversion; and fraudulent conveyance. A default judgment (the "Judgment") was entered against ILG for $1,993,856.48 in the United States District Court. The plain language of the Policy indicates Navigators Insurance had no duty to defend ILG for the claims brought in the Underlying Action.

On 2 June 2014, USAT filed suit in Guilford County Superior Court against James A. Williams ("Williams"), the CEO and President of ILG, to enforce the Judgment. Williams asserted counterclaims against USAT.

On 20 June 2014, USAT sent Navigators Insurance a copy of the Judgment and a letter demanding payment of the Judgment. After Navigators Insurance failed to respond to the demand letter, USAT filed an amended complaint purporting to add Navigators Insurance Company and Navigators Management Company, Inc. ("Navigators Management") (collectively "Defendants") as defendants to the suit against Williams. The case was designated a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina pursuant to N.C. Gen. Stat. § 7A-45.4(a). The case was assigned to Chief Judge James L. Gale of the North Carolina Business Court.

USAT asserted claims against Navigators Insurance and Navigators Management for: (1) conspiracy to defraud; (2) bad faith claims settlement practices; and (3) "unfair trade practices" pursuant to N.C. Gen. Stat. § 75-1.1. On 17 October 2014, Navigators Insurance and Navigators Management filed motions to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Navigators Management premised its motion to dismiss on arguments that: (1) it was not a party to the Policy between ILG and Navigators Insurance; (2) USAT did not plead its conspiracy to defraud claims with specificity; and (3) it did not issue the Policy.

In its motion to dismiss, Navigators Insurance argued (1) the Policy did not provide coverage for the Judgment; (2) USAT's lack of coverage under the Policy precluded it from acting in "bad faith" by not paying the judgment; (3) the lack of coverage precluded USAT's unfair trade practices claims; (4) USAT did not plead its

conspiracy to defraud claim with specificity; and (5) USAT's lack of coverage under the Policy precluded the fraudulent concealment claim.

On 21 July 2016, the trial court issued an order and opinion dismissing all of USAT's claims against Navigators Insurance and Navigators Management. On 2 March 2017, the remaining claims by and between USAT and Williams were voluntarily dismissed. USAT filed timely notice of appeal of the trial court's order.

## II. Jurisdiction

Appeal lies of right in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) (2013) and 1-277 (2017). In 2014, our General Assembly enacted Chapter 102 of the 2014 North Carolina Session Laws, which, among other things, amended N.C. Gen. Stat. § 7A-27 so as to provide a direct right of appeal to the Supreme Court from a final judgment of the Business Court. *See* 2014 N.C. Sess. Laws 621, 621, ch. 102, § 1.

The effective date of the 2014 amendments to N.C. Gen. Stat. § 7A-27(a)(2) was 1 October 2014. *See* 2014 N.C. Sess. Laws 621, 629, ch. 102, § 9 ("Section 1 of this act becomes effective October 1, 2014, and applies to actions designated as mandatory complex business cases on or after that date.").

The present case was designated as a mandatory complex business case on 7 July 2014, prior to the effective date of the 2014 amendments to N.C. Gen. Stat. § 7A-27(a)(2). This case is properly before this Court.

## III. Standard of Review

> The standard of review of an order granting a [motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6)] is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true. On a motion to dismiss, the complaint's material factual allegations are taken as true.

*Bissette v. Harrod*, 226 N.C. App. 1, 7, 738 S.E.2d 792, 797 (2013) (citations omitted).

A motion to dismiss should be granted when: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Wood v. Guilford Cty.,* 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002).

"[W]hen ruling on a Rule 12(b)(6) motion, a court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Capital, L.P. v. Slavin,* 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001). We review the trial court's dismissal of an action *de novo. Grich v. Mantelco, LLC*, 228 N.C. App. 587, 589, 746 S.E.2d 316, 318 (2013).

IV. Analysis

A. *Introduction*

USAT argues the trial court erred by granting Defendants' motions to dismiss. USAT asserts it became a third-party beneficiary to the Policy upon entry of the

default judgment against ILG, obtained the right to payment on the Judgment from Defendants, and to sue Defendants directly for their failure to pay.

## B. *Third-Party Beneficiary*

USAT argues the trial court erred when it dismissed its claims against Defendants for unfair trade practices and bad faith claims settlement practices because USAT is a third-party beneficiary of the Policy. We disagree.

USAT brings its unfair or deceptive trade practices claim pursuant to N.C. Gen. Stat § 75-1.1 and its bad faith claims settlement claim pursuant to N.C. Gen. Stat. § 58-63-15(11).

It is well-established in North Carolina that:

> [while] a plaintiff generally cannot sue the insurance company of an adverse party under G.S. § 75-1.1, if the plaintiff achieves the status of an *intended third-party beneficiary* arising from the contractual relationship between the adverse party and the adverse party's insurance company, the plaintiff may then bring a claim against the insurance company for violating the unfair and deceptive practices statute.

*Prince v. Wright*, 141 N.C. App. 262, 270, 541 S.E.2d 191, 197 (2000) (emphasis supplied). "[A] private right of action under N.C.G.S. § 58-63-15 and N.C.G.S. § 75-1.1 may not be asserted by a third-party claimant against the insurer of an adverse party." *Lee v. Mut. Community Sav. Bank*, 136 N.C. App. 808, 810, 525 S.E.2d 854, 856 (2000) (citation and quotation marks omitted).

The controlling case regarding direct actions by a third-party plaintiff against an insured's insurer is *Wilson v. Wilson,* 121 N.C. App. 662, 468 S.E.2d 495 (1996). In *Wilson*, this Court held "North Carolina does not recognize a cause of action for third-party claimants against the insurance company of an adverse party based on unfair and deceptive trade practices under N.C.G.S. § 75-1.1." *Id.* at 665, 468 S.E.2d at 497. Shortly after *Wilson* was decided, this Court created an exception to the *Wilson* rule, and held, "[t]he injured party *in an automobile accident* is an intended third-party beneficiary to the insurance contract between insurer and the tortfeasor/insured party." *Murray v. Nationwide Mut. Ins.* Co. 123 N.C. App. 1, 15, 472 S.E.2d 358, 366 (1996) (emphasis supplied) (citations omitted), *rev. denied*, 345 N.C. 344, 483 S.E.2d 173 (1997).

Following *Murray*, this Court has required the third-party plaintiff, in an automobile accident context, to have obtained a judgment against the liability insurance company's insured before it may have standing to sue the insurance company directly. *See Craven v. Demidovich*, 172 N.C. App. 340, 342, 615 S.E.2d 722, 724 (2005) (affirming dismissal of plaintiff's claims against insurer when insured's liability had not been judicially determined).

USAT argues *Murray* holds that a third-party claimant's obtainment of a judgment against the insurance company's insured *ipso facto* raises the claimant to a retroactive intended third-party beneficiary of the insurance contract, and thereby places the third-party claimant in privity of contract with the insurer. We disagree.

USAT's argument ignores the fact that the third-party claimant's privity with the insurer is based upon the third-party claimant being an injured party in an automobile accident. *See Murray,* 123 N.C. App. at 15, 472 S.E.2d at 366. The Court's ruling in *Murray* was premised upon its recognition that an "injured party *in an automobile accident* is an intended third-party beneficiary to the insurance contract between insurer and the tortfeasor/insured party . . . *and for this reason alone, [the plaintiff is] not bound by the third-party restrictions set forth in Wilson.*" *Id.* (emphasis supplied).

In the automobile accident context, an injured party is recognized as a third-party beneficiary to the liability insurance policy, because, under the statute, "[t]he primary purpose of th[e] compulsory motor vehicle liability insurance is to compensate innocent victims who have been injured by financially irresponsible motorists." *Nationwide Mut. Ins. Co. v. Chantos*, 293 N.C. 431, 440, 238 S.E.2d 597, 604 (1977).

Contrary to USAT's assertions, *Murray* did not recognize nor implement a general rule that judgments against insureds provide claimants with rights to recover from insurers directly. *Murray* recognizes (1) that if a third-party claimant is a party to an insurance contract and (2) obtains a judgment against an insurance company's insured, then the third-party claimant would have standing to sue the insurer directly. *See Murray*, 123 N.C. App. at 15, 472 S.E.2d at 366.

*Murray* does not establish that a third-party claimant's obtainment of a judgment against an insured establishes privity with the insurer as a matter of law, as USAT asserts we should hold. USAT's argument also misconstrues language in *Taylor v. N.C. Farm Bureau Mut. Ins. Co.*, 181 N.C. App. 343, 638 S.E.2d 636 (2006), *rev. denied,* 345 N.C. 344, 483 S.E.2d 173 (2007), summarizing the holding of *Murray,* to argue the obtainment of a judgment by a third-party against an insured establishes privity with the insured's insurer.

As quoted by USAT, this Court stated in *Taylor, "*In [*Murray*] we found privity between the plaintiff and the tortfeasor's insurer and allowed an excess policy coverage claim for unfair and deceptive trade practices based on the insured's post judgment behavior towards the plaintiff.*" Taylor,* 181 N.C. App. 345-46, 638 S.E.2d at 637-38. *Taylor* does not recognize or summarize *Murray* as holding that a third-party obtains privity with an insurer by obtaining a judgment against its insured. *See id.*

USAT asserts it can bring direct claims against Defendants for unfair or deceptive trade practices and bad faith settlement practices, based upon this Court's reversal of a trial court's dismissal of a negligence claim against an insurer in *Prince v. Wright*. In *Prince*, the personal representative of the estate of a minor child killed by a fire in a rental house caused by an electrical problem brought claims against the landlord for negligence, breach of statutory duties, and wrongful death. *Prince,* 141 N.C. App. at 264-65, 541 S.E.2d at 194-95. The personal representative also brought

claims against the landlord's insurance company for negligence and unfair and deceptive trade practices. *Id.*

The insurance company had undertaken to conduct an inspection of the rental house "for the purpose of detecting and detailing the suitability of the house for residential purposes, including but not limited to, damage or potential damage to the electrical system[.]" *Id.* at 267, 541 S.E.2d at 196. The personal representative alleged in her negligence claim against the insurer that the insurer had failed to warn the residents of the potential fire hazard created by water damage to the electrical system. *Id.* In reversing the trial court's dismissal of the negligence claim against the insurance company, this Court determined, that even though the plaintiff was not in privity with the landlord's insurer, the plaintiff could maintain the negligence action against the insurer because "[the insurer] may have created for itself a duty to plaintiff which it breached by first expressly undertaking to conduct an inspection of the suitability of the house for residential purposes and then by failing to warn tenants of the dangerous conditions it discovered during that inspection." *Id.*

On the personal representative's claims for unfair or deceptive trade practices, this Court cited *Wilson* and *Murray* and held the personal representative did not have standing to bring the unfair or deceptive trade practices claim. *Id.* at 269-70, 541 S.E.2d at 197.

The Court determined the personal representative was not an intended third-party beneficiary of the landlord's insurance contract with the insurer, because the

insurer insured the house against loss or damage for the benefit of the landlord, and the landlord did not enter into the insurance policy for the benefit of potential residents living in the house, "but rather paid for the coverage to reduce or eliminate loss caused by circumstances such as a house fire." *Id.* at 270, 541 S.E.2d at 198. The Court affirmed the trial court's dismissal of the unfair or deceptive trade practices claim because the personal representative was not in privity with the insurer to bring a direct action under the policy. *Id.*

Unlike the plaintiff in *Prince*, USAT has not asserted a claim against Defendant-insurers for negligence. *See id.* The Court's holding in *Prince* with regards to the negligence claim does not support USAT's argument that it has standing to bring an unfair or deceptive trade practices claim and bad faith settlement practices claim directly against Defendants. This Court's review and disposition of the negligence claim in *Prince* is irrelevant to USAT's claims, especially in light of the Court's ruling in *Prince* that the plaintiff did not have standing to bring an unfair or deceptive trade practices claim against the insurer, because she was not an intended third-party beneficiary of the insurance contract between the insurer and insured defendants. *Id.*

USAT also argues the recent case of *Nash Hosps., Inc. v. State Farm Mut. Auto. Ins. Co.*, __ N.C. App. __, 803 S.E.2d 256 (2017), supports its contention "that the rule in *Wilson* is not applicable when privity is established by judgment or settlement." In *Nash.*, a not-at-fault motorist injured in an automobile accident incurred

treatment costs with several medical providers, including the plaintiff, Nash Hospitals. *Nash*, __ N.C. App. at __, 803 S.E.2d at 259. State Farm, the insurer for the at-fault driver, received notice of Nash Hospitals' medical liens under N.C. Gen. Stat. §§ 44-49 and -50 from Nash Hospitals' counsel. *Id.* State Farm entered into a settlement agreement with the not-at-fault driver and provided her with a check payable to herself, Nash Hospitals and another medical provider. *Id.* Nash Hospitals was not notified of the settlement nor presented with the check for endorsement or payment. *Id.* Nash Hospitals eventually sued State Farm, asserting that N.C. Gen. Stat. § 44-50 "specifically requires the liability insurer to retain out of any recovery, before any disbursements, a sufficient sum to pay lien holders," and State Farm's failure to comply with §§ 44-49 and -50 constituted an unfair trade practice. *Id.*

State Farm argued Nash Hospitals did not have standing to bring an unfair or deceptive trade practices claim, because its suit did not involve a dispute over an insurance contract. *Id.* at __, 803 S.E.2d at 262. This Court determined that State Farm and the not-at-fault driver, who was not State Farm's insured, were in privity upon them entering into the settlement agreement, and that Nash Hospitals was in privity with State Farm, reasoning:

> Once a claimant and an insurance company enter into a settlement agreement, they are therefore in privity. And by enacting N.C. Gen. Stat. §§ 44-49 *et seq.*, the General Assembly expanded the scope of privity to hospitals and medical service providers. As discussed *supra*, the purpose of N.C. Gen. Stat. §§ 44-49 *et seq.* is to protect hospitals and other health care providers that provide medical services

> to injured persons who may be unable to pay at the time the services are rendered, but who may later receive compensation for their injuries. *Smith*, 157 N.C. App. at 602, 580 S.E.2d at 50. As a result, Nash Hospitals' privity became effective the moment Defendant received notice from Nash Hospitals of its assertion of a valid lien pursuant to N.C. Gen. Stat. § 44-49 *and* reached a settlement agreement with [the injured driver].

*Id.* at __, 803 S.E.2d at 263 (emphasis in original).

This Court held, in part, that Nash Hospitals had standing to sue State Farm for unfair or deceptive trade practices because of the statutory privity provided to hospitals and medical service providers by N.C. Gen. Stat. § 44-49. *Id.*

Contrary to USAT's contention, this Court in *Nash* did not make a general determination "that the rule in *Wilson* is not applicable when privity is established by judgment or settlement[,]" but that N.C. Gen. Stat. § 44-49 operates to grant a medical service provider privity with regard to a settlement agreement between an injured person "who may be unable to pay at the time the services are rendered[]" and an insurance company. *Id.*

USAT attempts to assert an alternative argument for the first time on appeal that certain provisions of the Policy should be interpreted as making it an intended third-party beneficiary. USAT failed to raise or make this alternative argument within its responsive briefing to Defendants' motions to dismiss before the trial court, at the hearing on Defendants' motions before the trial court, or allege it in its complaint. USAT cannot assert a new theory for the first time on appeal. *Weil v.*

*Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934) ("An examination of the record discloses that the cause was not tried upon that theory, and the law does not permit parties to swap horses between courts in order to get a better mount [on appeal]."); *see State v. Sharpe*, 344 N.C. 190,195, 473 S.E.2d 3, 6 (1996), *cert. denied*, 350 N.C. 848, 539 S.E.2d 647 (1999) ("[I]t is well settled in this jurisdiction  that [a party] cannot argue for the first time on appeal [a] new ground . . . that he did not present to the trial court.").  This alternative argument is dismissed.

USAT has not cited any authority, binding upon this Court, which tends to establish a trade creditor is in privity with its debtor and the debtor's insurer with respect to a directors and officers liability insurance policy, merely by virtue of the trade creditor's obtainment of a judgment against the insured debtor.  It is undisputed  and admitted that USAT is not specifically and expressly named in the Policy.

Treating the allegations in USAT's complaint as true, USAT has failed to establish the privity required by *Murray* for it to have standing to assert claims for unfair or deceptive trade practices and bad faith claims settlement.  Without privity, the general rule that "a private right of action under N.C.G.S. § 58-63-15 and N.C.G.S. § 75-1.1 may not be asserted by a third-party claimant against the insurer of an adverse party[,]" prevails. *Lee*, 136 N.C. App. at 810, 525 S.E.2d at 856 (citation and quotation marks omitted).  USAT does not have standing to assert its unfair or deceptive trade practices claim and bad faith settlement claim. *See id.*

USAT has failed to state an unfair trade practices claim or a bad faith settlement claim upon which relief can be granted. N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2017). USAT's unfair trade practices claim and bad faith settlement claim were properly dismissed. USAT's arguments are overruled.

### C. Conspiracy to Defraud

USAT also fails to state a claim upon which relief can be granted with respect to its conspiracy to defraud claim. North Carolina does not recognize an independent cause of action for civil conspiracy. *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005) (citation omitted). A civil conspiracy claim must be based on an adequately pled underlying claim. *Id.* The claim underlying USAT's civil conspiracy allegations is fraud.

Rule 9(b) of our Rules of Civil Procedure requires that "[i]n all averments of fraud . . . the circumstances constituting fraud or mistake shall be stated with particularity." N.C. Gen. Stat. § 1A-1, Rule 9(b) (2017). "[I]n pleading actual fraud, the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981).

"Dismissal of a claim for failure to plead with particularity is proper where there are no facts whatsoever setting forth the time, place, or specific individuals who purportedly made the misrepresentations." *Bob Timberlake Collection, Inc. v.*

- 15 -

*Edwards*, 176 N.C. App. 33, 39, 626 S.E.2d 315, 321 (2006) (citation and internal quotation marks omitted).

Here, the Business Court properly concluded that USAT had failed to plead fraud with particularity. In its conspiracy to defraud claim, USAT alleges with respect to Defendants, the following:

> 228. Navigators conspired with ILG's officers and directors to commit fraud on the court by intending to cause default be entered against ILG purportedly for non-payment of legal fees, when Navigators intended to pay for the defense of co-defendants and when the ILG Policy covered ILG with regard to the acts and omissions of ILG's officers including Williams, and Navigators conspired to dissolve ILG without disposing of contingent or known liabilities of which Navigators was aware or reasonably should've been aware.
>
> . . .
>
> 230. Navigators are conspiring with Williams to avoid paying the Judgment despite facts that already establish liability of both be established and Trouser is entitled to attorney fees as damages relating thereto.
>
> 231. Navigators Insurance is conspiring with Navigators Management to avoid paying the Judgment in violation of North Carolina law.

The complaint does not: (1) allege the identity of any specific person associated with Navigators Insurance or Navigators Management who made misrepresentations or omissions; or (2) provide either the specific, or even the approximate, "time or place" at which either of the Defendants, together or separately, conspired with ILG's directors. *Id.* The Complaint contains none of this

specific information, but instead asserts only conclusory allegations that Defendants are liable for paying the Judgment against ILG, and are engaging in fraudulent acts to avoid paying the Judgment.

Because USAT failed to plead the underlying claim of fraud with particularity, the conspiracy to defraud claim was properly dismissed by the Business Court. N.C. Gen. Stat. § 1A-1, Rule 9(b); *see Edwards*, 176 N.C. App. at 39, 626 S.E.2d at 321 ("A trial court properly dismisses a claim for failure to plead fraud with particularity where there are no facts whatsoever setting forth the time, place, or specific individuals who purportedly made the misrepresentations."). USAT's arguments are overruled.

## V. Conclusion

USAT did not become a third-party beneficiary to the Policy upon entry of the default judgment against ILG, nor did USAT obtain the right to payment on the Judgment directly from Defendants, or to sue Defendants directly for unfair trade practices or bad faith claims settlement practices. USAT also failed to plead the underlying claim of fraud with particularity and the conspiracy to defraud claim was properly dismissed by the Business Court.

Plaintiff's complaint fails to state a claim upon which relief can be granted. The order and opinion of the North Carolina Business Court granting Defendants' motions to dismiss is affirmed. *It is so ordered.*

AFFIRMED.

Chief Judge McGEE and Judge DAVIS concur.